UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-146-FDW
(3:15-cr-73-FDW-DCK-1)

| | |
|---|---|
| JIMMY LEE WILLIAMS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )  ORDER |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**THIS MATTER** is before the Court on Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 7).

## I. BACKGROUND

Petitioner was charged in the underlying criminal case with: Counts (1)-(2), conspiracy to defraud the United States; Counts (3)-(10), uttering a forged and counterfeit security; Counts (11)-(20), stealing property of the United States; Counts (21)-(25), bank fraud; Counts (26)-(28), scheme to defraud with regards to state tax stamps; and Count (29), concealment money laundering. (3:15-cr-73 (CR), Doc. No. 1).

Petitioner pleaded guilty pursuant to a written Plea Agreement to Counts (1), (2) and (29), in exchange for the Government's dismissal of the remaining 26 counts. (CR Doc. No. 19 at 1). The written Plea Agreement sets forth Petitioner's sentencing exposure for each count and states that the sentence has not yet been determined and the Court will consider the advisory sentencing guidelines. (CR Doc. No. 19 at 2-3). The parties agreed to jointly recommend: the base offense level be determined under U.S.S.G. § 2S1.1; the loss amount is in excess of $550,000; a role adjustment applies for an organizer and leader of a criminal activity with five or more participants

1

and was otherwise excessive; and an anticipated adjusted offense level of 26. (CR Doc. No. 19 at 2). The Government agreed to recommend a reduction for acceptance of responsibility, if applicable. (CR Doc. No. 19 at 3). The Government reserved the right to advocate at sentencing for other applicable enhancements including: additional relevant conduct relating to postal fraud committed by other coconspirators and accomplices; the underlying offense involved the possession of five or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification; and that Petitioner committed Count (1) while he was on bond pending adjudicating of a supervised release violation under 18 U.S.C. § 3142 and he is also subject to 18 U.S.C. § 3147(1). (Id.). The parties reserved the right to seek a departure or variance from the applicable guideline range. (Id.).

Petitioner agreed that, by pleading guilty, he was expressly waiving the right to be tried by a jury, to be assisted by an attorney at trial, to confront and cross-examine witnesses, and not to be compelled to incriminate himself. (CR Doc. No. 19 at 5). Petitioner acknowledged that he discussed with his attorney his rights to contest his conviction and/or sentence through an appeal or post-conviction action. He agreed to waive these rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 19 at 6). Petitioner stipulated that there is a factual basis for the plea and that the Court may use the written Factual Basis, (CR Doc. No. 22), may be used by the Court and the U.S. Probation Office without objection to determine the applicable advisory guideline range or the appropriate sentence. (CR Doc. No. 19 at 5).

The Factual Basis provides that, beginning no later than November 1, 2010, and continuing through on or about the present," while using "various alias names," Petitioner "organized and participated in various schemes involving counterfeit and fraudulent checks, credit manipulation, theft of government property, interstate transportation of stolen property and money laundering."

2

(CR Doc. No. 22 at 1). The Factual Basis further provides that the schemes were "executed by the use of the United States Mail and/or federally insured financial institutions and victimized, among others, the United States Postal Service (U.S. Postal Service), federally-insured financial institutions, and individuals with personal and business checking accounts throughout the Southeastern United States." (CR Doc. No. 22 at 1-2). During these schemes, Petitioner and his co-conspirators, "cashed hundreds of fraudulent checks at United States Post Offices … and businesses in exchange for postal stamps, goods and services valued at more than $678,000." (CR Doc. No. 22 at 2).

A Rule 11 hearing came before Magistrate Judge David Keesler on October 15, 2015. (CR Doc. No. 24). Petitioner stated in open court that he understood he was under oath, that he was expressly consenting to have a U.S. Magistrate Judge conduct the proceeding, that he received a copy of the Indictment, discussed it with his attorney, is fully aware of the charges against him, his sentencing exposure, the plea agreement, the Factual Basis, and any defenses, and was pleading guilty knowingly and voluntarily. (CR Doc. No. 24). Petitioner acknowledged the rights he was pleading guilty. (Id.). He also agreed that he understood that he discussed the sentencing guidelines with counsel, that the Court would determine the sentence after the PSR was prepared, that the Court might not follow the Government's recommendation with regards to the sentence, that he may receive a sentence that is higher or lower than the guidelines, and that the Court may order restitution. (Id.). He understood and was waiving the rights set forth in the Plea Agreement including his appellate and collateral review rights. (Id.). He also read and understood the written Factual Basis, reviewed it with counsel, and agreed with what it said. (Id.). Nobody threatened, intimidated, or forced him to plead guilty. (Id.). Other than the terms of his plea agreement, nobody made him any promises of leniency or a light sentence to get him to plead guilty. (CR Doc. No.

3

24 at 3). He agreed had enough time to discuss any possible defenses with counsel, was satisfied with his lawyer's services, and did not have anything else to say about counsel's services. (Id.). He confirmed that he understood all parts of the proceeding, still wished to plead guilty, and had no questions or statements at that time. (Id.).

The Presentence Investigation Report ("PSR") calculated the base offense level for Counts (1) and (2) as six pursuant to U.S. Sentencing Guidelines §§ 2B1.1 and 2X1.1. (CR Doc. No. 32 at ¶ 54). Fourteen levels were added because the loss amount was greater than $680,000. (CR Doc. No. 32 at ¶ 55). Four levels were added for Petitioner's role as an organizer or leader involving five or more participants or was otherwise extensive, and three more levels were added because the offense was committed while Petitioner was on release for another offense.[1] (CR Doc. No. 32 at ¶¶ 57, 59). The adjusted offense level was therefore 27. (CR Doc. No. 32 at ¶¶ 60, 67). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 24. (CR Doc. No. 32 at ¶¶ 69-71). Petitioner had nine criminal history points and two more were added because the instant offense was committed while Petitioner was under a criminal justice sentence, totaling 11 criminal history points and a criminal history category of V. (CR Doc. No. 32 at ¶¶ 117-19). The resulting guidelines range was 92 to 115 months' imprisonment followed by between one and three years of supervised release. (CR Doc. No. 32 at ¶¶ 211, 215).

Counsel filed objections to the PSR, *inter alia*, that a departure is warranted pursuant to U.S. Sentencing Guidelines § 5K2.23 because Petitioner served 34 months for violations of supervised release that were part of the same criminal conduct as the instant offense. (CR Doc. No. 30).

---

[1] The three-level enhancement for committing part of the offense after having been release on conditions of bond was added pursuant to the Government's objections to the draft PSR. See (CR Doc. No. 31).

4

A sentencing hearing came before the Court on April 19, 2016. (CR Doc. No. 47). Petitioner admitted that he received a copy of the PSR, reviewed it with counsel, and had no questions about it. (CR Doc. No. 47 at 7). Petitioner told the Court that he recalled the questions that Judge Keesler asked him during the Rule 11 hearing, that he would still answer the questions the same way, and that he still wanted to plead guilty. (CR Doc. No. 47 at 3-5). The Court affirmed Judge Keesler's acceptance of the plea at the Rule 11 hearing and independently found the plea to be knowing and voluntary. (CR Doc. No. 47 at 6). The Court agreed with a defense objection that the three-level adjustment for commission of the offense while on release was not applicable, but overruled the defense request for a departure pursuant to § 5K2.23 and for a variance. As a result, the total offense level was 23 and the statutory enhancement pursuant to § 3147 no longer applied. The guideline range was therefore 84 to 105 months' imprisonment. See (CR Doc. No. 41) (Statement of Reasons).

The Court sentenced Petitioner to 60 months' imprisonment for Counts (1) and (2) and 105 months for Count (29), concurrent, followed by three years of supervised release. (CR Doc. No. 40).

Petitioner, through counsel, raised a claim of ineffective assistance of trial counsel on direct appeal. The Fourth Circuit Court of Appeals affirmed on November 21, 2016 because the record did not conclusively establish ineffective assistance and so this claim should be raised, if at all, in a § 2255 motion. United States v. Williams, 670 F. App'x 795 (4th Cir. 2016).

Petitioner filed his initial § 2255 Motion to Vacate on February 18, 2018, (Doc. No. 1), and the Amended § 2255 Motion to Vacate on June 23, 2018, (Doc. No. 7). In the Amended § 2255 Motion to Vacate, he argues: [2] (1) trial counsel was ineffective for advising him to sign a plea

---

[2] Petitioner failed to include several claims that he raised in the original § 2255 Motion to Vacate in the Amended § 2255 Motion to Vacate. Petitioner was cautioned, when he was granted leave to amend, that any claims omitted from

5

Case 3:18-cv-00146-FDW   Document 24   Filed 12/15/20   Page 5 of 18

agreement that included enhancements relating to conduct that was not admitted and related to other dismissed counts; (2) appellate counsel was ineffective for raising on direct appeal a claim of ineffective assistance of counsel rather than Petitioner's "real issue;" (3) the Court should have applied a downward departure pursuant to U.S.S.G. § 5K2.23 for the 34 months that Petitioner spent for violations of supervised release that were relevant conduct for the instant offense; and (4) the Magistrate Judge lacked authority to accept Petitioner's guilty plea. He asks the Court to vacate his conviction and sentence, credit him with 34 months towards his sentence, and grant him immediate release.

The Government filed a Response, (Doc. No. 15), arguing that Petitioner cannot establish ineffective assistance of trial or appellate counsel, that his assertions of prosecutorial misconduct are insufficient as a matter of law, that his allegation that he received inadequate notice of the prosecutor's arguments for offense-level adjustments does not entitle him to relief, that Magistrate Judge Keesler's presiding over his plea colloquy does not entitle him to relief, and that his assertion that he should be granted a downward departure does not entitle him to relief.

Petitioner sought, and was granted, several extensions of time to reply but he failed to do so. See (Doc. Nos. 17, 19, 23).

## II.    STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to

---

the amended § 2255 petition would be waived. (Doc. No. 6 at 2). The claims that Petitioner failed to include in his Amended § 2255 Motion to Vacate are therefore waived and will not be discussed in this Order. Even if Petitioner had raised those claims in his Amended § 2255 Motion to Vacate, however, they would be rejected for the reasons set forth in the Government's Response, (Doc. No. 15).

collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

**(1) Ineffective Assistance of Trial Counsel**

Petitioner contends that trial counsel was ineffective for advising him enter into the Plea Agreement because it includes conduct that Petitioner did not admit and that relates to dismissed counts, to which he was entitled to a presumption of innocence. He claims that this information was then included in the PSR which resulted in sentencing enhancements. Petitioner contends that counsel intentionally and fraudulently concealed the enhancements to induce him to plead guilty while knowing that the dismissed counts would be used at sentencing, which rendered his guilty plea involuntary.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at

7

688.  A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003).  The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

      The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of

competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

Petitioner signed a written Plea Agreement in which he expressly agreed to a base offense level under U.S.S.G. § 2S1.1; a loss amount in excess of $550,000; a role adjustment for organizer and leader of a criminal activity with five or more participants and was otherwise excessive; and an anticipated adjusted offense level of 26. (CR Doc. No. 19 at 2). He expressly agreed that the prosecutor could seek additional enhancements and that either party to seek a departure or variance. (Id.). Petitioner admitted that he understood and agreed with the foregoing under oath during the Rule 11 hearing. (CR Doc. No. 24). Petitioner further stated at the Rule 11 hearing that he read and agreed with the Factual Basis. (Id.). The Court accepted Petitioner's knowing and voluntary plea and the PSR was calculated in accordance with the parties' agreement. Petitioner's self-serving and unsupported statements that counsel somehow hid the sentencing enhancements from him and induced him to plead guilty without understanding his sentencing exposure are conclusively refuted by his sworn statements to the contrary and are rejected. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary). Moreover, Petitioner cannot demonstrate

9

Case 3:18-cv-00146-FDW   Document 24   Filed 12/15/20   Page 9 of 18

prejudice. He told the Court, after he received the PSR and reviewed it with counsel, that he still wished to plead guilty. (CR Doc. No. 47 at 4-5). Further, it would not have been objectively reasonable for Petitioner to proceed to trial as the Plea Agreement resulted in the dismissal of 26 additional serious charges and a three-level adjustment for acceptance of responsibility. He has failed to demonstrate that he would have gone to trial but for counsel's alleged misadvice.

Therefore, Petitioner's claim of ineffective assistance of trial counsel will be denied.

**(2)** **Ineffective Assistance of Appellate Counsel**

Petitioner contends that appellate counsel was ineffective for raising a claim of ineffective assistance of counsel, which she should have known is not cognizable on direct appeal, rather than Petitioner's "real issue" (Doc. No. 7 at 5). Petitioner contends that there would have been a different result on direct appeal had counsel properly raised "omitted issues." (Doc. No. 7-1 at 9).

The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Smith v. Murray, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). However, appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct

appeal … with the strength of the arguments that were raised." United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018). To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

Petitioner's claim of ineffective assistance of appellate counsel is meritless. Petitioner appears to suggest that counsel should have raised the claims identified in the instant § 2255 proceedings on direct appeal. However, these claims are meritless and counsel cannot be deemed ineffective for failing to raise them. Further, to the extent that Petitioner claims that counsel was ineffective for raising a claim of ineffective assistance because such are never cognizable on direct appeal, this is mistaken. See generally United States v. Richardson, 195 F.3d 192, 198 (4th Cir. 1999) (ineffective assistance of counsel claims are cognizable on direct appeal if it appears on the record that defense counsel did not provide effective representation). Counsel did not perform ineffectively by raising a claim of ineffective assistance on direct appeal, especially in light of the fact that Petitioner's Plea Agreement contains a waiver of appellate claims except for claims of ineffective assistance of counsel and prosecutorial misconduct. (CR Doc. No. 19 at 6). Appellate counsel did not perform deficiently by presenting an ineffective assistance claim on direct appeal within the strictures of Petitioner's appellate waiver. See United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992) (an appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made).

Therefore, Petitioner's claim of ineffective assistance of appellate counsel will be denied.

**(3) Sentencing**

Petitioner appears to contend that the Court erred by failing to grant him a downward departure pursuant to U.S. Sentencing Guidelines § 5K2.23 for the 34 months that Petitioner spent for on supervised release for offenses that serve as relevant conduct to the instant offense.

This claim is time-barred. A one-year statute of limitation applies to motions to vacate under § 2255, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

A federal judgment becomes final "when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari," or, if a petitioner does not seek certiorari, "when the time for filing a certiorari petition expires." Gonzalez v. Thaler, 565 U.S. 134, 149 (2012) (quoting Clay v. United States, 537 U.S. 522, 532 (2003)). An otherwise time-barred petitioner is entitled to equitable tolling in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party." Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)); United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000)("§ 2255's limitation period is subject to equitable modifications such as tolling."). Equitable tolling of petitions for collateral review is available only when the petitioner demonstrates "(1) the has

been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S 631, 649 (2010); see Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements.").

For an untimely claim relate back to the original timely-filed pleading, it must be shown that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In the context of a habeas motion, "conduct, transaction, or occurrence" does not mean the same "trial, conviction, or sentence," such that any claim that relates to the prior conviction or sentence challenged in a habeas motion is considered timely, no matter how long after the original motion it is filed. Rather, a proposed amendment relates back to the date of the original motion if it "state[s] claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005).

Petitioner raised this claim for the first time in his Amended § 2255 Motion to Vacate, which was filed outside the one-year statute of limitations. This claim does not relate back to any of the timely-filed claims in the original § 2255 Motion to Vacate and Petitioner has failed to demonstrate that an exception to the limitations bar applies.

This claim is also barred by procedural default. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would

13

result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). With regards to cause and prejudice, a petitioner must demonstrate: (1) the existence of cause for a procedural default that turns on something external to the defense; and (2) actual prejudice resulting from the errors of which he complains. United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010). To establish cause based upon ineffective assistance of counsel, a petitioner must show that the "attorney['s] performance fell below an objective standard of reasonableness and that [he] suffered prejudice as a result." Mikalajunas, 186 F.3d at 493; see Strickland, 466 U.S. at 687 (ineffective assistance of counsel standard). Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a petitioner must show actual innocence by clear and convincing evidence. See Murray, 477 U.S. at 496. Petitioner failed to raise this claim of sentencing error on direct appeal and Petitioner has failed to demonstrate cause and prejudice or actual innocence.

Further, this is a claim of sentencing calculation error was waived by Petitioner's knowing and voluntary guilty plea and is not cognizable on § 2255 relief. See United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993) ("a guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges."); Blackledge v. Perry, 417 U.S. 21, 29-30 (1974) (after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

Moreover, this claim is meritless. Section 5K2.23 provides that a downward departure may be appropriate if the defendant: (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 … would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense….” U.S.S.G. § 5K2.23 (2015). Section 5G1.3 provides that a term of imprisonment that resulted from another offense that is "relevant conduct" to the instant offense is adjusted by "any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons…." U.S.S.G. § 5G1.3(b) (2015). "The intended purpose of [] § 5G1.3(b) is to effectively 'credit[] for guidelines purposes' defendants who have already served time – generally in another jurisdiction – for the same conduct or course of conduct." United States v. Flowers, 13 F.3d 395, 397 (11th Cir. 1994). The grant of a downward departure pursuant to § 5K2.23 is committed to the sentencing court's discretion. See, e.g., United States v. Boodie, 590 F. App'x 67, 68 (2d Cir. 2015).

Counsel sought a § 5K2.23 departure and the parties argued the issue at the sentencing hearing. The prosecution argued that the supervised release revocations are not undischarged terms of imprisonment for purposes of 5G1.3 because the revocations were for violating the conditions of the original offense, and not for the new violations themselves. See United States v. Thompson, 7 F. App'x 234 (4th Cir. 2001) (rejecting defendant's claim that § 5G1.3(b) should apply because his violation of probation was based in part on his possession of the same firearm that was the basis of the instant federal offense because "the offense that resulted in the undischarged term of imprisonment was the underlying prior offense, not the conduct that violated the conditions of parole."); § 5G1.3, App. Note 4(C) (noting that § 5G1.3(d) applies in cases where the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense

15

and has had such revoked and that, in that situation, "the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation."). The Court agreed and denied a downward departure pursuant to § 5K2.23; Petitioner has failed to demonstrate that this exercise of discretion was erroneous. Therefore, even if this claim were not subject to dismissal, it would be denied on the merits.

For all the foregoing reasons, this claim will be dismissed and denied.

**(4)** **Magistrate Judge Authority**

Finally, Petitioner contends that Judge Keesler lacked authority under 28 U.S.C. § 636 to accept his guilty plea to felony offenses despite Petitioner's consent and a lack of prejudice. (Doc. No. 7 at 5); (Doc. No. 7-1 at 14).

This claim is time-barred because Petitioner raised it in his Amended § 2255 Motion to Vacate after the applicable statute of limitations expired and it does not relate back to the original timely § 2255 Motion to Vacate. This claim is also procedurally defaulted from § 2255 review because it could have been, but was not, raised in this Court or on direct appeal and Petitioner has failed to demonstrate cause and prejudice or actual innocence. This claim is also barred by the waiver contained in Petitioner's Plea Agreement because it is not a claim of prosecutorial misconduct or ineffective assistance of counsel. Further, Petitioner waived this claim because he agreed to have the Rule 11 hearing proceed before a magistrate judge and this alleged violation of the Federal Magistrates Act is not cognizable on § 2255 review. Moreover, no error occurred because Judge Keesler presided over the Rule 11 hearing within his "additional duties" under the Magistrate Judge Act with the parties' consent and his acceptance of the guilty plea was adopted by the Court. See 28 U.S.C. § 636(b)(3) (the Magistrate Judge Act grants magistrate judges the authority to perform "such additional duties as are not inconsistent with the Constitution and laws

16

of the United States."); Peretz v. United States, 501 U.S. 923 (1991) (conducting *voir dire* in a felony case with the parties' consent is within the "additional duties" in § 636(b)(3) and does not raise an Article III concern); United States v. Benton, 523 F.3d 424, 433 (4th Cir. 2008) (recognizing that the law is clear that magistrate judges may conduct Rule 11 hearings and a magistrate judge's acceptance of a plea, with the consent of the parties, does not present any constitutional problems and is an "additional duty" under § 636(b)(3); a district court's ultimate control over a magistrate judge's plea acceptance satisfies any Article III structural concerns).

Therefore, Petitioner's allegation of error with regard to Judge Keesler presiding over the Rule 11 hearing with the parties' consent is dismissed and denied.

### IV. CONCLUSION

For the foregoing reasons, the Court will dismiss and deny Petitioner's Amended § 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 7), is **DISMISSED** and **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive

17

Case 3:18-cv-00146-FDW Document 24 Filed 12/15/20 Page 17 of 18

procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: December 14, 2020

Frank D. Whitney
United States District Judge